W. H. E. MERRIT et al. *v.* WILLIAM C. DOSS and WIFE.

1. HUSBAND AND WIFE : RIGHT OF WIFE TO USE HER HUSBAND'S NAME IN ACTION TO RECOVER HER SEPARATE ESTATE.—The wife may use the name of the husband, especially when he is absent from the State, in any suit or controversy for the recovery of her separate estate, to which the law requires him to be a party ; and in such case the husband's consent will be presumed until his dissent is clearly shown.

2. SAME.—Whether the husband, on being indemnified against the costs, would have the right to refuse the use of his name to his wife, in a suit to recover her separate estate. *Quære.*

3. STATUTE OF LIMITATIONS : HUSBAND AND WIFE.—A.'s adverse possession to the premises in controversy commenced in 1841; the wife of B. in 1842, whilst the land was so held adversely, purchased it at a sheriff's sale, made under a judgment rendered against B., and which was a lien on the premises. B. and wife brought suit in 1852, to recover the land upon the wife's title. *Held,* that the recovery was not barred either by the Statute of Limitations of 1822, or the statute of 1844; the period prescribed by the former, viz., twenty years, not having elapsed, and the wife being a *feme covert* when the latter was passed.

4. SAME.—The husband's right of possession, or to the rents and profits of the wife's realty, is but an incident to the title of the wife. His seisin is not sole and separate in himself, but joint with the wife and in her right; and if the Statute of Limitations be no bar to the right of the wife, on account of her coverture, it will be no bar to the right of the husband, which is merely incidental, and does not vest until after the recovery of the land.

IN error from the Circuit Court of Warren county. Hon. John I. Guion, judge.

In April, 1853, the defendants in error, Doss and Wife, brought their action in the court below against the plaintiffs in error, to recover the land in controversy. The complaint claimed the land as

the separate property of the wife. The defendants filed their answer generally denying the allegations of the complaint.

At the return term of the writ, the defendants moved the court to compel the plaintiff's counsel to produce his authority for commencing the suit in the name of W. C. Doss. In support of this motion the affidavit of defendant's agent was filed. Stating in substance, as set out in the opinion of the court. The court overruled the motion, and the defendants tendered their bill of exceptions.

At the November Term, A. D. 1854, the cause was tried before a jury, and the plaintiffs had verdict and judgment. The plaintiffs proved that in 1837, the defendants sold and conveyed the premises in controversy with other lands in fee simple, to W. C. Doss; that in 1839, a judgment was rendered against said Doss in favor of one Jones, upon which an execution issued and was levied on the land in 1842, which was soon afterwards sold by the sheriff at public sale to Mrs. Doss; that the defendants were in possession of the premises at the commencement of the suit, and had been since 1841.

The defendants proved, that they had enclosed the land in 1841, and had it in possession ever since, cultivating it in cotton; and that it was adjoining other lands of defendants, on which they had a cotton plantation. They also proved, that they had paid the taxes on the land in controversy since 1841.

They proposed further to prove, that their agent called on Mrs. Doss, about fifteen months before the suit was instituted, and had a conversation with her in relation to the premises sued for; in which Mrs. Doss stated, that it was agreed in 1841, between W. C. Doss and defendants, that the conveyance made in 1837 by them to Doss, should be rescinded to the extent, that defendants were to have and keep that portion of the lands then conveyed, which is now in controversy, and release Doss from a judgment which they had recovered against him for the purchase-money, and that Doss should have the remainder of the lands; and that defendants had released the judgment, and entered into possession under the aforesaid agreement, which had not been reduced to writing.

The ·plaintiffs objected to the evidence, and the court sustained the objection.

On the subject of the Statute of Limitations the court gave the following instructions for the plaintiffs.

6. The defendants merely being in possession and cultivating the land, without title, and without asserting claim to the land, would not authorize the running of the Statute of Limitations; the claim must be open and notorious to authorize it.

7. If they even believe from the evidence, that the Statute of Limitations, as it existed in 1841 or 1842, at the time defendants got possession of the land, commenced running in their favor, defendants have not yet acquired title thereto, the period of limitations at that time and up to the 24th of February, 1844, being twenty years.

8. That the time during which Mrs. Doss was a *feme covert*, shall not be taken and computed a part of the time limited by the Statute of Limitations.

To the giving of which instructions the defendants excepted.

The defendants asked the following instructions:—

1. If the jury believe from the evidence,; that the defendants have been in the actual possession of the land in controversy, and cultivating the same, ever since the year 1841, openly and notoriously, the Statute of Limitations commenced running in favor of defendants from that time, and was not stopped by the subsequent purchase of the property by Mrs. Doss; and such continued possession is sufficient to defeat the plaintiff's action.

2. Actual possession is adverse possession, unless accompanied with an admission, or is shown by other proof to be otherwise.

The court gave the second and refused the first; and defendants excepted.

*W. C.* and *A. K. Smedes*, for plaintiffs in error.

1. It is insisted that the court below erred, in refusing to require the plaintiffs' attorneys below to show their authority for using the name of W. C. Doss, in the prosecution of their right. During the lifetime of Doss, he was entitled to the possession of this land, even though the title might be in his wife; in case of the death of

his wife before him, his right as tenant by the curtesy, there having been children born of the marriage, would have entitled him and those claiming under him, to a continued possession during his life, even as against the heirs of his wife. The affidavit filed to compel the attorneys of the plaintiffs below to show their authority for the use of the husband's name, states that the defendants are in possession under a contract with the husband, by his authority, and that he does not seek to disturb their possession; that this suit is brought without his knowledge, consent, or approval.

Now the only question on this point is: *does the justice of the case* require the attorney of the plaintiff to show his authority for using the name of the husband? If it does, the court will compel him to produce it. See *M'Kiernan* v. *Patrick*, 4 How. 333; *Anderson* v. *Patrick*, 7 How. 347, and the cases cited.

Whose was the land in controversy in the case? Admitting the validity of Mrs. Doss's purchase, under the execution against her husband, that she purchased with her own money and thus became invested with the title, still her husband during coverture, and during his own life, which might outlast the coverture, was entitled to the lands; and therefore without his consent she could prosecute no suit for its recovery. Whether this action be regarded as a possessory one, and nothing more than the ordinary action of ejectment, or whether it be a suit for the land itself, and in effect, a genuine writ of right, the result will be the same. Doss's estate in the lands is his own—*a life estate;* and was subject to sale under execution against him, or could be sold by *his own act;* his right was one which he could assert or maintain or abandon at his election. Indeed, the very moment it is admitted that he had *any right*, that moment the necessity of his assent to the institution of a suit in his name for its recovery, is demonstrated, unless the act of purchase by a wife, of property of her husband under execution against him *dissolves the coverture*, or be itself *a nullity*, the husband acquires some right, *jure mariti*, in the land, that right whatever it may be, *he*, and *he alone*, can assert. His wife can not assert it for him, much less in spite of him.

But an inspection of the record will show that the wife sought to enforce merely *her own rights*. She sets out in the complaint

Merrit et al. *v.* Doss et ux.

that the land is hers; that she is entitled to the possession of it; and prays the possession to be awarded to her; and the damages asked are for her. She ignores her husband completely, except in the simple recognition of the fact, that she has a husband. But in the admission of the fact of her having a husband, she admits the rights incident to that relation, and those rights are of possession and appropriation of the profits during coverture *by him.* Therefore, where he, as in this case is alleged to be the fact, has, by *"contract and agreement,"* parted with the right of possession, a suit cannot lawfully be instituted by her, without his knowledge or consent, in his name, to recover that possession. We therefore think the court below should have required the plaintiff's counsel below to show their right to use Doss's name.

2. The main question, however, in this case turns upon the Statute of Limitations. The facts to which that statute is to be applied are these, viz.: The defendants below, in February, 1837, sold William C. Doss a piece of land by deed, and put him in possession of the whole of it. He remained in possession of all of it until some time in 1841, when the defendants, his vendors, obtained possession of part of it, and retained the possession under fence, cultivating the same with their other lands in cotton and corn, without molestation, until the commencement of the suit. In May, 1839, one Ransom Jones obtained judgment against William C. Doss, and execution issued on it, and the land in controversy was sold to Sylvia C. Doss, wife of William C. Doss, in April, 1842; and in April, 1853, she commenced this action of ejectment. On this state of facts, the court below instructed the jury:—1st. That *twenty* years was the length of time that would bar Mrs. Doss's right. 2d. That while she was a *feme covert* the statute did not run against her at all, (see 7th & 8th instruction). 3d. That "the defendants merely being in possession, and cultivating the land without title, and without asserting claim to the land, would not authorize the running of the Statute of Limitations; the claim must be open and notorious to authorize it." (See 6th instruction.) The court below also refused to instruct the jury that, "if they believed from the evidence that the defendants had been in the actual possession of the land in controversy, and cultivating the same ever since the

Merrit et al. *v.* Doss et ux.

year 1841, openly and notoriously, the Statute of Limitations commenced running in favor of the defendants from that time, and was not stopped by the subsequent purchase of the property by Mrs. Doss; and such continued possession is sufficient to defeat the plaintiff's action."

Two questions are thus presented by these instructions thus given and refused. 1st. What length of time under the law would present a bar to Mrs. Doss's claim? 2d. Was there such an adverse holding in this case as would constitute a bar?

1. It is insisted that Mrs. Doss, being a *feme covert* at the time her right accrued to her, is affected by no lapse of time while her disability lasts. That it is not the case of an intervening disability after the statute had commenced to run against her; but that her right accrued when she was under disability, and therefore the statute never began to run against her. She was a *feme covert* when she bought, and was therefore always under a disability. The answer to this ingenious distinction is this: Her purchase was not one of compulsion; it was her *own act*. At the time of her purchase, the property was in possession of the defendants below, held and claimed adversely by them. The statute had then begun to run in their favor against the world; and the fact that she chose to buy at sheriff's sale, under execution, not against them, but against another party, and that her own husband, cannot stop the statute as against them. Upon that principle it would never stop; and no lapse of time would protect them; for if the land should be sold under execution against Mrs. Doss, and another *feme covert* should buy it, her disability being coetaneous with her right—and so it might go on *ad infinitum*. I do not think there can be any doubt that the Statute of Limitations, if it had commenced to run before she purchased, continued to run, notwithstanding her purchase, and in spite of her disability. Having once begun to run, nothing could stop its progress. See Angell on Lim. 208, and notes, 518, 519, 520, and notes; *Mercer* v. *Selden*, 1 How. U. S. R. 37. She could have no better right than her husband. It had begun to run against him; and as she claims under him *a fortiori*, it would run against her.

2. If, then, the statute ran against Mrs. Doss, did it require

Merrit et al. *v.* Doss et ux.

twenty years from 1841, the commencement of the adverse possession, or seven years from 1844, the passage of the present Act of Limitations? The former is contended for, upon the ground that twenty years was the period fixed by the statute when her right accrued; and by the Act of 1844, it is provided that the time of her coverture is not to be computed. It is insisted that she was a *feme covert* when the Act of 1844 took effect, and that therefore that act never applied to her; leaving the Act of 1822, of twenty years, the only one in force as to her. Statutes of Limitation form no part of the contract; they appertain alone to the remedy. It is simply a question, what was the period of limitation at the time of the institution of this suit, or when she sought to enforce her right; not what was it when her right accrued. Unquestionably it was twenty years when the latter occurred; we insist it was but seven when the former happened. If the limitation formed any part of her right, if it entered into, or was of the essence of her contract of purchase, the legislature could not change it, and reduce the time from twenty years to seven; but on this point she stands precisely where all other litigants stand, affected by the laws as they are when she attempts to enforce her rights; not as they were when they accrued.

What, then, in April, 1851, was the law of limitation regulating this case? Had she not been a married woman, there could be no question on the point, for it has been twice expressly adjudicated.

Does her coverture at the time of the passage of the Act of 1844 make a shadow of difference in her position? The statute had begun to run in 1841, and had run *three* years, and was running when the Act of 1844 took effect. She was therefore subject to *some* Act of Limitation, for there was a statute running against her, when that of 1844 was passed. What was the effect of the Act of 1844? It was simply to *reduce* the periods of limitation to those created by the act of 1844, from those existing under the Act of 1822. Suppose Mrs. Doss had been a *feme sole* in 1842, when there was an actual adverse possession, and when she acquired her right, and had married before the Act of 1844 took effect, could it be pretended that she would be within the saving of coverture of the Act of 1844? That would be to destroy the intention

and object of the Act of 1844, and prolong, instead of reducing periods of limitation. It would be to confer a right not previously existing; to create a disability, where there was none before. The Act of 1844 took effect *from its passage.* It created the limitation of seven years, and barred the right of entry after that time. The position of Mrs. Doss is not at all different in her present attitude from what it would be in the case supposed. In both she was under disability when the Act of 1844 was passed; but in both the statute was running against her, and therefore according to the fixed rule, continued to run, *notwithstanding that disability.* According to the law of limitations in force in this State when this action was begun, *seven* years was the *longest* period required to bar an action of ejectment; a shorter period would have sufficed to bar, if previous to 1844, it had run long enough to make with the time after 1844 a period of twenty years; to that extent alone former limitations were kept alive; except for that end they were repealed. This view, it seems to us renders it conclusive, that she was barred by the lapse of seven years from 1844.

3. Was there then a seven years *adverse possession?* We do not stop here to criticise the verbiage of the instructions, nor to comment on the contradictory nature of those given; nor to insist that the sixth instruction took the consideration of the evidence from the jury, and declared what was and what was not in proof; but we address ourselves to the inquiry, was there seven years of *adverse possession* proven?

The proof was on the part of both the plaintiffs and defendants, that the latter took possession of the disputed premises in 1841, and continued in possession from that time until the institution of the suit, cultivating the land in cotton and corn, and using it in all respects as they did their other and adjacent lands; there was no proof of the *right* under which they entered. There was no documentary evidence of title offered. No color of title shown. There was simply proof of the use and occupation of the *locus in quo*, as if it were their own property for more than ten years before action brought, and for more than seven years after the 24th day of February, A. D. 1844, without molestation from any quarter, or assertion of title by any one. This, we insist, consti-

Merrit et al. *v.* Doss et ux.

tuted *an adverse possession.* It was an actual *possessio pedis.*
There is no pretence that defendants entered under the plaintiffs;
or held under them; or occupied any relation of trust or confidence
towards them; or that their possession was in any way reconcila-
ble or consistent with the title of plaintiffs, or in subjection or
subordination to it. The possession complied fully with all that
is laid down in the elementary writers, as necessary to constitute
an *adverse* holding. The occupation was " visible and notorious;"
it was " an actual occupation and appropriation of what the defend-
ants claimed within defined boundaries." See Angell on Lim.
416, § 13. It complied fully with "the strong acts of exclusive
possession," required by Chief Justice Shaw, in *Blood* v. *Wood,*
1 Met. R. 528. The land was "enclosed and cultivated, and that
for a long time, and openly and notoriously;" and that too, *under
the very eye of the plaintiffs,* who occupied the adjoining place—
part of this very tract. Even if the original entry in this case
would be presumed to be *by wrong,* the claim of the entry does not
go beyond the rule laid down by Mr. Justice Washington : (*Potts* v.
*Gilbert,* 3 Wash. C. C. R. 475,) " the limits of the particular spot
to which the defendant's occupation is confined." In the language
of the Supreme Court of New York, (*Doe* v. *Campbell,* 10 Johns.
R. 477,) the possession here is marked " by definite boundaries and
is regularly continued down," and so is adverse. A *continued*
residence is proved here; but it has been decided that that is not
necessary, " it being sufficient that the land has been enclosed,
and used in such a manner as to give publicity to the possession."
Angell on Lim. 417, n. 5, § 13, chap. xxxi.

To constitute *adverse possession,* it is not necessary that the
defendants enter under a grant or *color of title of any kind.* Nor
has this court, as is thought by the plaintiffs, so decided in *Benson*
v. *Stewart,* Op. Book, 636. That case is governed by a wholly
different principle. The possession of the defendant there was
not considered adverse, because it was considered *consistent with
the title of the other party;* and there was a relation of confidence
between the parties, that of vendor and vendee, and the purchase-
money was unpaid. No such circumstances exist here. Here the
possession is hostile or adverse, because it is an actual corporeal

occupation, a *possessio pedis,* attended with a manifest intent to hold and continue it; *conclusive evidence* of which intent, say the cases cited by Angell, in his work on Lim. 415, § 12, chap. xxxi., is *actual improvement and cultivation of the soil.* While to constitute adverse possession it must be "an actual, visible, and exclusive appropriation of land, commenced and continued under *a claim of right."* See Angell on Lim. chap. xxxi., § 11; yet that *claim of right* need not be "an openly avowed claim;" but it may be a "constructive claim," arising from the acts and circumstances attending the appropriation, to hold the land against him who was seized; *conclusive evidence* of which claim is afforded "*by the actual improvement and cultivation of the soil."* We do not think it worth while to discuss this subject any further, and think it very likely we have already expended unnecessary labor upon it. We do not think it requisite to offer any formal answer to the assumption entirely unsustained by law or reason, that Mrs. Doss's title as against Merrit and Parham, relates back to the date of the judgment against Doss in favor of Jones. The defendants below were no parties to that judgment, and their possession and claim were adverse from 1841, to Jones, Doss, his wife, and the world. All the instructions based on that assumption are clearly wrong. Nor do we think it necessary to reply at any greater length to the objection, that the Statute of Limitations was not formally pleaded, than to say that this was *an action of ejectment,* and in that action, "not guilty" is the only plea. Besides, under the plea of general denial, filed according to the statute in this case, anything which would defeat the plaintiff's action, is admissible. And in addition, this point was not made below, where the plea, if indispensable, could have been filed on the objection being made; but the case was tried there on the law and facts as exhibited in the record; and the court will not permit the objection here. Nor need we more than notice the pretence that the record shows that we entered without title, or under a void title. The record does not show under what right we entered, as the proof we offered on that point was *rejected,* and not therefore before the court; and we are not now complaining of its rejection; and

Merrit et al. *v.* Doss et ux.

further, it is immaterial under what right we entered, if our possession was adverse to plaintiff's right.

*James Shirley*, for defendants in error.

1. The court was right in overruling the motion to compel plaintiffs' attorneys to show authority from Doss to prosecute the suit.

Doss was a mere nominal party, having no interest in the matter in controversy, and it is very questionable, whether, if Doss were here residing with his family, and was really to object to the prosecution of the suit, the court would for a moment listen to his objection. But in this suit, from the facts as disclosed by the testimony, it is wholly immaterial, whether his assent was obtained or not, or whether his name was joined as plaintiff or not.

The affidavit of J. W. Merrit, read in support of this motion, asserts that Doss was a non-resident of the State; that he had lived for several years past in Texas, and was supposed to be now in California.

Henry W. Vick, a witness for plaintiffs, states, "that Doss left the State in 1847 or 1848, and has not returned since." From these statements, he was not even a necessary party. The unity of husband and wife no longer existed. He had deserted his wife, and gone to parts unknown. She was left to act for herself, and was no longer under his power, control, or protection. The reason of the law ceasing, the law itself ceased. He had abandoned Mrs. Doss for six or seven years; all this time she was acting as a *feme sole*, and as such might have sued and been sued. We therefore believe, that his assent or dissent to the institution of this suit was wholly immaterial, and that the court below decided correctly in overruling the motion, in which it is sustained by both principle and authority.

In support of this view, we would refer the court to the case of *Bean* v. *Morgan*, 4 M'Cord, R. 148, where it was held, "that if the husband depart from the State, with intent to reside abroad, and without the intention of returning, his wife becomes competent to contract, and to sue and be sued as a *feme sole*."

2. It is also contended by counsel, that Mrs. Doss is barred of her right of entry on the land, by the Statute of Limitations.

The record does not show that the defendants relied on the statute. No plea of the statute appears in the pleading, and we respectfully submit, whether they can, now in this court, avail themselves of this defence. But, suppose we are mistaken in this, how can the statute benefit them? Mrs. Doss purchased in 1842, and was at the time a *feme covert*, and has continued a *feme covert* to the present time. The statute, (see Hutch. Code, 829,) says, "the time during which the person who has a right of action, was a *feme covert*, shall not be taken and computed as a part of the limited period." The Statute, therefore, of 1844, has not yet commenced running against her; if the Act of 1822 commenced running at the time the Merrits enclosed the land, in 1841, she is not yet barred by that act; it is not yet twenty years, as required by that statute to bar.

The counsel for defendants, contend, that defendants being in possession, by having enclosed the land by a fence, in 1841, the Statute of Limitations then commenced running, and having commenced to run, no intervening disability would prevent its continuing to run; that although the Act of 1822 presented no bar by itself, to her claim, and although Mrs. Doss was, and is yet, a *feme covert*, that the Act of 1822 runs into the Act of 1844, and became so connected and dovetailed together, in such a manner as completely to cut out and exclude Mrs. Doss wholly from all benefit from her purchase.

In support of this view, he refers to the case of *Waul* v. *Kirkman*, 3 Cushman, 609, and relies upon the opinion of the court in that case as conclusive authority for his position. We apprehend, that upon examination of that case, in contains no such doctrine.

The question presented for the consideration of the court, arose under the Statute of 1844, which says: "A suit shall be commenced within three years after the cause of action accrued." The question was, if the cause of action accrued before the passage of the Act of 1844, whether the statute would begin to run at all; if so, when? The High Court simply decided, that if the cause of action accrued before the passage of the Act of 1844, the limitation would commence from the date of its passage. This is the whole substance of the decision; and in support of this, see the decision

Merrit et al. *v.* Doss et ux.

of this court in the case of *Buckingham* v. *Riggs*, 5 Cushm. 751, where the court say, "we have heretofore settled, that when a cause of action or right existed previous to the date of the passage of the Act of 1844, the period of limitation therein prescribed, commences from the passage of the act." Besides, section 18th of that act is explicit, that the period of limitation, as established by this act, shall commence running from the date of its passage. When, therefore, would the Act of 1844 bar? The answer is plain,—seven years from the date of its passage. When would it commence running against Mrs. Doss? Seven years from the time her coverture ceased; and as that has not yet ceased, it has not yet commenced to run against her. What, then, becomes of this defence; this spanning bridge of counsel?

Again, we contend, the Statute of Limitations never commenced running in favor of defendants. There is no proof of claim by them, or adverse holding in the record. Adverse possession is a possession under color and claim of title. 9 Johns. R. 179, 180; 3 Conn. R. 166. The claim should be open and notorious. According to the proof attempted to be introduced, of the statements of Mrs. Doss, the Merrits went into possession under a verbal contract with Doss. Admitting the proof as attempted to be shown, their possession was not adverse; it was the possession of Doss, under whom they held; therefore, the Statute of Limitations never commenced running, especially before Mrs. Doss's right accrued in 1842.

A mere contract for a deed, though the purchaser enter under it, does not place him in a situation to hold adversely; such possession not being hostile in its inception. 1 Cow. R. 610; see also, 5 Ib. 92.

FISHER, J., delivered the opinion of the court.

William C. Doss and wife, brought this suit in the Circuit Court of Warren county, to recover certain lots and parcels of land, situated in the city of Vicksburg, in the possession of the defendants below.

The complaint avers that the land is the property of the wife, and that she is entitled to the possession of the same.

Before proceeding with the trial, on the merits, in the court

below, the defendants moved for a rule on the plaintiff's counsel, to produce his authority for commencing and prosecuting the suit. The motion was supported by an affidavit of the agent of the defendants, setting forth that Doss was, and had been for many years, a non-resident of the State, residing at one time in the State of Texas, and was then in the State of California; that affiant believed the suit had been instituted, and was prosecuted without the knowledge, consent, or authority of Doss. "That the defendants were then in the possession of the land in controversy, and had been in possession of the same, by and with the consent of Doss, for more than seven years before the institution of the suit, claiming title to the same in their own right, and as of their own property, by and with the knowledge and consent of said William C. Doss, before any right accrued to his wife." The court, upon this showing, refused to grant the rule on counsel; and this is assigned as the first error in the record.

It is said by the counsel for the plaintiffs in error, that Doss, being entitled during the coverture, to the possession, rents and profits of his wife's lands, was the substantial party to the suit, and that his consent to its institution was therefore necessary.

The testimony introduced on the trial may sustain counsel in this position; but on the trial of the motion, the court could only act upon the case as it was presented, and not with reference to testimony which had *not then* been introduced.

The complaint avers that the land belongs to the wife, and that she is entitled to the possession of the same. The wife, according to the complaint, having the entire interest in the subject-matter of the suit, was of course the substantial party thereto. The party having the substantial right, must be regarded as the substantial party to the controversy. The relation existing between husband and wife, would justify the latter in using the name of her husband, especially when he is shown to be absent from the State, in any suit or controversy, to which the law required him to be a party for the recovery of her separate property; and his consent in such case would be presumed, until his dissent was clearly shown.

Where the wife has a right of action, and the husband is a necessary party to the suit, the law presumes that he has con-

sented to the use of his name, upon the principle that every man is presumed to perform those duties which pertain to the marriage relation; among which may be included that which requires the husband to do whatever is necessary for the protection of his wife's estate, or to place her in the full enjoyment of the same. The question, in such case, is not one of previous consent, or authority by him to institute the suit, but of subsequent dissent, upon being informed of what had been done; and even then a question might arise, whether the suit would be dismissed, if he were fully indemnified against the payment of the costs. We are, therefore, of opinion, that the court below committed no error on this point.

The next question arises upon the Statute of Limitations. The land in controversy was sold under an execution against Doss, in 1842, and purchased by Mrs. Doss—who received a regular deed of conveyance from the sheriff for the same. The defendants below, in 1837, conveyed the land to Doss. Without noticing specially the various instructions given and refused by the court below, it will be sufficient to state, in general terms, the point presented. The defendants went into possession of the land in 1841; claiming it, in the language of the testimony, as their own, and have ever since continued to hold and use it as their own property. They, however, show no written evidence of title. It is said that the statute having commenced running in 1841, against Doss, that it still continued to run against his wife, after her purchase in 1842; upon the principle, that when the statute once commenced running it continued to run, notwithstanding the wife's disability to sue. However true this may be as a general rule, it is not true in this case, for the reason that the statute of 1844, has, in express terms, provided otherwise; 1st and 2d sections of Act 1844, Hutch. Code, 829. But it is said that Mrs. Doss's title having accrued prior to the Act of 1846, in regard to the rights of married women, Doss would be entitled to the possession of the land; and that the statute would run against such right, as he labored under no disability to sue. The husband's right of possession, or to the rents and profits of the land, is but an incident to the title of the wife. He is not solely seised of the land, but is jointly seised with his wife. In the technical language of the books, "the

husband and wife are jointly seised in right of the wife." Clancy, Husband and Wife, 161.

The statute not running, therefore, as to the principal—the wife's title,—would not run as to the incident—the possession—which might vest in the husband after the recovery of the land.

Judgment affirmed.